IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:20-CR-159** |
| | : | |
| v. | : | (Judge Conner) |
| | : | |
| **JARED BISHOP HEISEY,** | : | |
| | : | |
| **Defendant** | : | |

### MEMORANDUM

The government filed a pretrial motion (Doc. 16) *in limine* seeking to introduce evidence of defendant Jared Bishop Heisey's prior bad acts at his upcoming trial. For the following reasons, the court will deny the government's motion without prejudice.

**I.     Factual Background & Procedural History**

On July 1, 2020, a federal grand jury returned a three-count indictment charging Heisey with two counts of abusive sexual contact without consent in violation of 18 U.S.C. § 2244(b) (Counts 1 and 3), and assault of an employee of the United States government in violation of 18 U.S.C. § 111(a)(1) (Count 2). Heisey pled not guilty. The government filed a motion *in limine* requesting permission to introduce evidence of Heisey's prior bad acts under Federal Rule of Evidence 404(b). Heisey opposes this motion. The motion is ripe for disposition.

**II.    Discussion**

The government seeks to introduce testimony of two employees at Heisey's place of employment, the Distribution Defense Logistics Agency in Mechanicsburg, Pennsylvania, under Federal Rule of Evidence 404(b). The government states that

these two witnesses "will testify that prior to and during the time period of the acts charged," Heisey was "verbally sexually harassing" them. (See Doc. 16 ¶¶ 10, 32). According to the government, the witnesses will testify that the harassment "included repeated requests for social interaction outside of work, repeated attempts to discuss his marital problems," and that Heisey showed these employees a photo "prominently displaying an intimate part of his body, on his phone." (See id. ¶¶ 11, 33). The government contends that while these acts were not physical, both employees reported the incidents to management and later became aware of the allegations against Heisey in this case. (See id. ¶¶ 12-13, 34-35).

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." FED. R. EVID. 404(b)(1). Such evidence, however, "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(2). "Rule 404(b) is a rule of general exclusion," precluding prior bad acts unless the proponent can show a proper purpose other than propensity. United States v. Repak, 852 F.3d 230, 240 (3d Cir. 2017) (quoting United States v. Caldwell, 760 F.3d 267, 276 (3d Cir. 2014)). The enumerated list under Rule 404(b) is not exhaustive; rather, evidence may be admissible "even if it does not fit one of the specific exceptions listed in the rule, so long as it is used for a purpose other than" propensity. United States v. Jemal, 26 F.3d 1267, 1272 (3d Cir. 1994). For example, the government may offer evidence of the "*modus operandi*" of a prior crime or bad act if the method "is so distinctive as

to constitute a signature . . . and thus prove identity." United States v. Wares, 689 F. App'x 719, 723 (3d Cir. 2017) (nonprecedential).

Rule 404(b) carries "no presumption of admissibility," and thus the proponent of the prior-bad-act evidence bears the burden of demonstrating the rule's applicability. Caldwell, 760 F.3d at 276 (citation omitted). Admission of prior bad acts under Rule 404(b) requires satisfaction of four distinct steps. United States v. Garner, 961 F.3d 264, 273 (3d Cir. 2020). First, the proponent of the prior bad act must identify a proper, non-propensity purpose that is "at issue" in, or relevant to, the case at hand. Caldwell, 760 F.3d at 276. Bad acts evidence is generally not admissible "to prove an issue that the defendant makes clear he is not contesting." See Jemal, 26 F.3d at 1274. Second, after identifying a proper non-propensity purpose that is "at issue," the proponent must carefully articulate how the prior bad act is relevant to proving that purpose without relying on propensity. Caldwell, 760 F.3d at 276. This step requires the proponent to set forth a "chain of inferences" that connects the prior bad act to the proper purpose, "no link of which is a forbidden propensity inference." Id. at 277 (quoting United States v. Davis, 726 F.3d 434, 442 (3d Cir. 2013)). Third, the court must perform a Rule 403 balancing analysis to ensure that the probative value of the prior bad act is not substantially outweighed by its "inherently prejudicial nature[.]" Id. (citation omitted). Finally, if requested, the court must provide a proper limiting instruction. Id. (citations omitted). This process demands "careful precision" from both the proponent of the prior-bad-act evidence and the judge determining its admissibility. United States v. Brown, 765 F.3d 278, 291 (3d Cir. 2014) (citing Caldwell, 760 F.3d at 274).

The proponent of 404(b) evidence must do more than "pluck[] a non-propensity purpose from the list in Rule 404(b)(2)." United States v. Lackey, 1:17-CR-269, 2019 WL 6468575, at *2 (M.D. Pa. Dec. 2, 2019). Indeed, the Third Circuit has stressed that "a proponent's incantation of the proper uses of [prior act] evidence . . . does not magically transform inadmissible evidence into admissible evidence." Caldwell, 760 F.3d at 276 (alterations in original) (quoting United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)). Prior bad acts are not "intrinsically relevant to" the proper purposes under Rule 404(b)(2). United States v. Sampson, 980 F.2d 883, 888 (3d Cir. 1992). Instead, the proponent of prior bad act evidence must explain *why* its proffered non-propensity purposes are "of consequence in determining the action." Caldwell, 760 F.3d at 276 (quoting FED. R. EVID. 401(b)).

The indictment charges Heisey with two counts of abusive sexual contact without consent, and one count of assault of an employee of the United States government. (See Doc. 1). To convict Heisey of Counts 1 and 3, the government must prove that Heisey knowingly had sexual contact with the victim without the victim's permission, and Heisey's actions took place within the special maritime or territorial jurisdiction of the United States. See 18 U.S.C. § 2244(b); see also WILLIAM J. BAUER PATTERN CRIMINAL JURY INSTRUCTIONS OF THE SEVENTH CIRCUIT 791 (2020 ed.); MANUAL OF MODEL CRIMINAL JURY INSTRUCTIONS FOR DISTRICT COURTS OF THE NINTH CIRCUIT 464 (2010 Ed.). The statute defines "sexual contact" as "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18

U.S.C. § 2246(3).  Count 2 accuses Heisey of assaulting the victim.  (See Doc. 1). The relevant statute prohibits any action that "forcibly assaults, resists, opposes, impedes, intimidates, or interferes with" a person who is an "officer or employee of the United States or of any agency in any branch of the United States government" while the person is "engaged in or on account of the performance of official duties." See 18 U.S.C. § 111(a)(1); 18 U.S.C. § 1114.  The government claims that eight of the nine enumerated non-propensity purposes under 404(b)(2) are "relevant to establish various elements of the offenses charged."  (See Doc. 17 at 8-9).  The government's claimed purposes are: (1) motive; (2) opportunity; (3) intent; (4) preparation; (5) planning; (6) knowledge; (7) absence of mistake; and (8) lack of accident.  (See id.); see also FED. R. EVID. 404(b)(2)).  The government concedes that identity is "not a factor."  (See Doc. 17 at 9).  The government cursorily invokes all of these exceptions, but, as we explain below, it has substantiated none of them.

      The government first claims that the employees' testimony is relevant to establish motive.  (See Doc. 17 at 8-9).  The government posits that because Heisey was "unsatisfied in his marriage," he was "unsuccessful in his attempts to convince these witnesses to have sex with him."  (See id.)  The government fails to explain why Heisey's alleged attempts to have sexual relations with two employees provided him motive to commit abusive sexual contact against a third, or even that motive is "at issue" in this case at all.  Cf. Caldwell, 760 F.3d at 276.  In fact, the government seems to argue that because Heisey previously attempted to have sex with two coworkers, it was more likely that he assaulted the victim in this case.  The rules of evidence clearly forbid such a propensity argument.

5

The government also argues that the testimony of these witnesses demonstrates opportunity. (See Doc. 17 at 9). Noting that Heisey was a "supervisor who was in a position of power," the government claims that he "made advances at work when he had access to them." (See id.) This conclusory statement fails to demonstrate why opportunity is "at issue" in this case. Cf. Caldwell, 760 F.3d at 276. True, the government must prove that Heisey's alleged sexual contact took place "within the special maritime or territorial jurisdiction of the United States," see 18 U.S.C. § 2244(b), and Heisey allegedly committed the charged offenses while at the Distribution Defense Logistics Agency, (see Doc. 1). However, the government's briefing does not claim that Heisey contests the location of the alleged crimes, or that the proposed testimony would be offered to establish this element.

The government next asserts that this testimony is relevant to prove intent and knowledge. (See Doc. 17 at 9). The government invokes intent because Heisey "resolutely intended to act this way to convince these employees to have sex with him, and was not 'swept up by the moment.'" (See id.) To the extent the government is arguing that intent is at issue because it is an element of the charged offenses, we are unpersuaded. Caldwell rejected the premise that "by denying guilt of an offense with a knowledge-based *mens rea*, a defendant opens the door to admissibility" of prior bad acts. Caldwell, 760 F.3d at 281 (citing United States v. Miller, 673 F.3d 688, 697 (7th Cir. 2012)). To do so would "eviscerate Rule 404(b)'s protection and completely swallow the general rule against admission of prior bad acts." Id. The fact that Heisey contests his guilt does not automatically put his intent at issue.

The government's arguments concerning "preparation" and "planning" are similarly undeveloped. According to the government, the employees' testimony shows "preparation" because Heisey allegedly had an indecent photo of himself "on his phone at the ready" and shows "planning" because he allegedly "approached each woman trying out different arguments and methods to get them to have sex with him." (See Doc. 17 at 9). Once again, the government fails to explain how either preparation or planning are at issue in this case, or how preparing to show a person an indecent photo is at all relevant to the crimes of the indictment. Cf. Caldwell, 760 F.3d at 276.

The government's invocation of "knowledge" and "absence of mistake" likewise falters at the first step. The government claims that the "knowledge" exception applies because when Heisey's alleged "verbal attempts were unsuccessful with these women, [he] would try a more physical approach with the victim." (See Doc. 17 at 9). Yet the government provides no other information regarding what knowledge Heisey might have gleaned from these alleged harassing conversations, or why such knowledge would be relevant to any material fact of this case. The government further argues that absence of mistake is relevant because the government believes Heisey will claim that the victim "misconstrued" his conduct, "overreacted," or that this was all "just a big mistake." (See id.) Beyond this speculation as to what Heisey *might* argue, the government does not provide any cogent connection between Heisey's alleged harassment of coworkers and how such conversations could be relevant to "absence of mistake" during his alleged commission of the crimes charged in the indictment.

The government proffers three additional bases for admissibility of the employees' testimony: (1) *modus operandi*; (2) *res gestae*; and (3) victim credibility. (See Doc. 17 at 10). *Modus operandi* evidence "normally arises in the criminal context where there is a question as to the identity of the perpetrator of the crime." Becker v. ARCO Chem. Co., 207 F.3d 176, 198 (3d Cir. 2000); see also United States v. Wares, 689 F. App'x 719, 723 (3d Cir. 2017) (nonprecedential). The government has conceded that identity is not at issue in this case. (See Doc. 17 at 9). Moreover, despite its *modus operandi* claim, the government argued the direct opposite in support of using these conversations to prove "planning," contending that Heisey used "*different* arguments and methods" while approaching his coworkers. (See id. (emphasis added)).

The government's "intrinsic evidence" arguments are also unpersuasive. "Intrinsic evidence" refers to evidence that courts sometimes termed "*res gestae*" evidence, or "thing done." United States v. Green, 617 F.3d 233, 241, 245 (3d Cir. 2010). Intrinsic evidence is admissible without regard to Rule 404(b), but only when it "directly proves" the charged offense or is "performed contemporaneously with" the charged offense and facilitates its commission. Green, 617 F.3d at 248-49. The government claims that the would-be witness employees "led authorities to the victim in this case." (See Doc. 17 at 10). Yet the government does not explain how the process for identifying the victim has any relevance to the crimes charged against Heisey. Nor does it provide a timeline or any argument that Heisey's alleged harassment somehow "facilitated" the abusive sexual contact or assault. Cf. Green, 617 F.3d at 249. It appears the government wants the court to admit

"extraneous and potentially prejudicial information into the record in the name of 'background.'" Cf. United States v. Steiner, 847 F.3d 103, 112 (3d. Cir 2017). Such a tactic "is not defensible under Rule 404(b)." See id.

Finally, the government asserts that this testimony is important to establish the credibility of the victim. (See Doc. 17 at 10). The government states that "the number of women with separate but similar disclosures cannot be ignored." (See id.) We are not convinced that this is anything but an explicit propensity argument —namely, that the sexual harassment allegations demonstrate Heisey's propensity to commit a crime of abusive sexual contact or assault. Cf. Brown, 765 F.3d at 294. While the government may be permitted to ask about this alleged harassment if Heisey takes the stand and denies the charges, such a line of inquiry goes more to Heisey's credibility, not the victim's. Cf. United States v. Davis, 183 F.3d 231, 257 (3d Cir.) as amended, 197 F.3d 662 (3d Cir. 1999) (allowing such evidence under Rule 608).

Simply put, the government fails to provide any argument to logically connect the proper purposes listed in Rule 404(b) with the material facts at issue in this case—indeed, the government does not specify why it believes any of the purposes are "at issue" at all. Cf. Caldwell, 760 F.3d at 276. This alleged harassment took place with two separate individuals, neither of whom is the victim of the acts charged in the indictment, and the government fails to demonstrate how the testimony of these employees would be relevant to establish the elements of any crime charged against Heisey. By claiming that the testimony of these employees is relevant to almost "every listed permitted use" under Rule 404(b), (see Doc. 17 at 8),

9

the government attempts to slot its evidence into any or all of the categories without further argument. In essence, the government is asking us to do what our court of appeals has forbidden—allowing a "mere recitation of the purposes" in Rule 404(b) as adequate to admit prior bad acts evidence. Cf. Davis, 726 F.3d at 442. The government therefore has not met its burden to move beyond step one. Cf. Garner, 961 F.3d at 273.

Assuming *arguendo*, that any of the purposes listed by the government for this evidence are at issue, the government also falters at step two by failing to explain how the evidence would persuade the jury without impermissibly suggesting propensity. Cf. Repak, 852 F.3d at 244. The government makes no effort to establish a "chain of inferences" with regard to any proffered purpose. Cf. id. It instead highlights elements of the crimes charged, argues either that Heisey "understood consent" or that his actions "were forcible and intimidating to the victim," and proceeds to list the admissible 404(b) purposes without explicitly connecting those purposes to the referenced elements or explaining how these proffered conversations are relevant to them. The government's argument can be boiled down to the following: because Heisey was previously reported for alleged sexual harassment, it is more likely that he committed abusive sexual contact and assault. Evidence of Heisey's conversations are therefore "relevant only in an impermissible way." Repak, 852 F.3d at 243 (quoting Caldwell, 760 F.3d at 281).

As the government has failed to carry its burden at steps one and two, we need not reach steps three or four. Cf. Caldwell, 760 F.3d at 283; see also United States v. Williams, 458 F.3d 312, 317 (3d Cir. 2006) ("[W]e do not begin to balance the

10

evidence's probative value under Rule 401 against Rule 403 considerations unless the evidence is offered under one of the Rule 404(b) exceptions."). Nonetheless, because we will deny the government's motion without prejudice, we note that its invocation of Rules 413 and 414 at step three misses the mark. (See Doc. 17 at 15 (arguing "the Rules of Evidence permit much more prejudicial evidence in even more serious cases")). These rules create exceptions to Rule 404(b)'s prohibition against propensity evidence for specific types of prior acts not at issue here. See FED. R. EVID. 413(a) (sexual assault); FED. R. EVID. 414(a) (child molestation); see also Williams, 458 F.3d at 317 n.5 (noting Rules 413, 414, and 415 are "exceptions" to Rule 404's "prohibition against propensity evidence"). All other types of prior act evidence remain subject to the Rule 404(b) process described herein. The balance of the government's step three arguments are foreclosed by our earlier conclusions: because the government has not articulated a permissible, nonpropensity purpose for the proposed testimony, we have no admissible probative value against which to measure its obvious prejudicial effect. Until the government satisfies these threshold requirements, this evidence cannot be considered probative, much less more probative than prejudicial, under Rule 403.

### III. Conclusion

We will deny the government's motion (Doc. 16) *in limine* without prejudice. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER  
Christopher C. Conner  
United States District Judge  
Middle District of Pennsylvania

Dated: February 19, 2021